UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Tara Miller,<br><br>Plaintiff,<br><br>vs.<br><br>Waffle House, Inc.,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT** |

**COMPLAINT**

Comes now, Plaintiff Tara Miller ("Plaintiff" or "Miller"), by and through undersigned counsel, and files this Complaint against Defendant Waffle House, Inc. ("Defendant" or "the Company"), seeking to recover damages for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and in support thereof alleges as follows:

**THE PARTIES**

1. Plaintiff is an adult citizen and current resident of Ruffin, South Carolina. At all times relevant to the allegations set forth in this Complaint, Plaintiff was a resident of South Carolina and an "employee" of Defendant within the meaning of Title VII.

2. Defendant, Waffle House, Inc., is organized under the laws of the State of Georgia, is registered to do business in the State of South Carolina, and its registered agent is Corporation Service Company, located at 508 Meeting Street, West Columbia, South Carolina 29169.

3. Defendant was, at all relevant times, an "employer" of Plaintiff within the meaning of Title VII. Upon information and belief, Defendant employs in excess of 500 employees and is a covered employer under Title VII.

4. Defendant controlled all aspects of Plaintiff's employment, including her supervision, job title, duties, schedule, hours, and compensation.

5. At all times relevant to this action, Defendant acted by and through its agents, servants, employees, and/or officers, including but not limited to those persons identified in this Complaint, and is therefore liable for the actions and omissions of those individuals taken within the course and scope of their employment, pursuant to federal law, state law, and common law.

**JURISDICTION AND VENUE**

6. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

7. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein were committed within this District and Division, and Plaintiff worked for Defendant within this District and Division.

8. Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about August 21, 2024, alleging sex discrimination/sexual harassment and retaliation in violation of Title VII (EEOC Charge No. 415-2024-02127), which charge included allegations substantially similar to those set forth herein and arising from the same set of facts. The EEOC issued Plaintiff a Dismissal and Notice of Right to Sue

on July 13, 2026. Plaintiff has therefore exhausted her administrative remedies as to Defendant, and this Complaint is timely filed within ninety (90) days of Plaintiff's receipt of that Notice.

**STATEMENT OF FACTS**

9. Plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

10. Plaintiff began her employment with Defendant in 2018 as a third-shift Supervisor at Defendant's location in Charleston, South Carolina.

11. Shortly after her employment began, Plaintiff attended the Company's Manager-in-Training program and was promoted to Manager in March 2020. Plaintiff was thereafter promoted to Unit Manager in 2021, and by all accounts was a strong performer and a "fast climber" within the Company.

12. In 2023, Plaintiff worked under Division Manager Chris Watson ("Watson"), who oversaw nine stores, including the Savannah Highway location in Charleston that Plaintiff managed.

13. Beginning in or around July 2023, and continuing thereafter, Watson subjected Plaintiff to unwelcome sexual advances and sexually charged comments, both by text message and in person, including repeated comments about Plaintiff's physical appearance and body.

14. Plaintiff repeatedly and unambiguously told Watson that she was not interested in a sexual or romantic relationship with him. Watson did not stop; the harassment continued.

15. On or about August 21, 2023, Plaintiff reported Watson's conduct to her direct supervisor, Area Vice President Brandon Rogers ("Rogers"), by telephone. During that call, Plaintiff told Rogers that Watson's comments and text messages made her uncomfortable, and that Watson's

wife had also begun sending Plaintiff unwelcome text messages after discovering Watson's communications with Plaintiff.

16. On or about August 24, 2023, Rogers visited Plaintiff's store in person, asked Plaintiff for information regarding Watson's conduct and for screenshots of the messages from Watson's wife, and assured Plaintiff that he would "handle" the situation.

17. Despite Rogers' assurances, Plaintiff continued to receive unwelcome calls and text messages from Watson's wife, including throughout Plaintiff's approved medical leave from September 23, 2023 through October 31, 2023. Plaintiff repeatedly notified Rogers of the continuing contact, and Rogers repeatedly assured Plaintiff that he would address it.

18. Upon information and belief, Defendant placed Watson on administrative leave and interviewed Watson's wife as part of an internal investigation into Watson's conduct, confirming that Defendant was on actual notice of Watson's harassment. Following that investigation, Rogers minimized the matter to Plaintiff, telling her of his conversation with Watson's wife: "She's nuts, we talked to her, don't worry."

19. On or about November 24, 2023, following a further text exchange involving Watson's wife, Plaintiff was placed on administrative/personal leave by Defendant, an action taken because of, and shortly after, Plaintiff's ongoing reports of Watson's harassment.

20. After several weeks had passed without Plaintiff being returned to a Unit Manager position as promised, Plaintiff asked Rogers why she had not been reinstated. Rogers told Plaintiff only that he was "working on it."

21. On or about December 18, 2023, because Defendant asserted that no other location needed a Unit Manager, Plaintiff was demoted in title and relocated to Defendant's location in

Walterboro, South Carolina. Although Plaintiff was told she would continue to receive her Unit Manager compensation, she was in fact paid less following the relocation.

22. Watson, by contrast, was not relocated and retained a Division Manager position, which he voluntarily accepted, notwithstanding that he was the subject of the harassment complaint and the internal investigation described above.

23. Following her complaints about Watson and her demotion and relocation to Walterboro, Plaintiff's job performance was, for the first time, called into question. Plaintiff was blamed for a missed bank deposit that was, in fact, the responsibility of the Division Manager rather than Plaintiff. Plaintiff was also falsely accused of improperly inventorying a truck delivery of bacon, an incident that Defendant claimed occurred in the fall of 2023, well before Plaintiff's complaints about Watson escalated, and that Defendant did not raise as an issue until after Plaintiff's protected activity.

24. On February 29, 2024, Defendant terminated Plaintiff's employment, citing the foregoing pretextual performance issues. Defendant's own internal separation paperwork records the reason for Plaintiff's termination as a violation of the Company's "Ten Laws of Management Conduct" policy, a shifting and after-the-fact justification inconsistent with Defendant's contemporaneous statements to Plaintiff.

25. Upon information and belief, after Plaintiff's termination, and after Defendant received a demand letter from Plaintiff's counsel dated April 18, 2024, Defendant conducted an internal "investigation" during which former coworkers of Plaintiff were pressured and coerced into providing statements asserting that Plaintiff had performance-related issues, in an effort to manufacture a post-hoc justification for Plaintiff's termination.

26. In response to Plaintiff's EEOC Charge, Defendant took the position, among other things, that Plaintiff never reported Watson's conduct to management or through Defendant's associate hotline, and that Plaintiff was not demoted, relocated, or otherwise retaliated against, but instead voluntarily requested to be relocated to be closer to her ailing mother. Both assertions are false and are contradicted by the evidence. Plaintiff's mother has never resided in Walterboro or elsewhere in South Carolina, and Plaintiff never signed any document requesting relocation on that basis. Upon information and belief, any such document offered by Defendant to support that assertion was fabricated or altered, and Defendant's shifting and demonstrably false explanations for its adverse actions against Plaintiff are further evidence that Defendant's stated reasons for those actions are pretext for unlawful discrimination and retaliation.

**FIRST CAUSE OF ACTION**

**(Sexual Harassment / Hostile Work Environment in Violation of Title VII, 42 U.S.C. § 2000e-2(a))**

27. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

28. Watson subjected Plaintiff to unwelcome conduct of a sexual nature, including sexually charged comments and advances made in person and by text message.

29. Watson's conduct was based on Plaintiff's sex.

30. Watson's conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment, such that a reasonable person in Plaintiff's position would perceive her work environment as hostile or abusive, and Plaintiff in fact so perceived it.

31. Watson's harassing conduct is imputable to Defendant because Watson was Plaintiff's supervisor and Defendant had actual notice of his conduct, through Plaintiff's own reports to Rogers beginning August 21, 2023, and through Defendant's own investigation and administrative leave of Watson, yet failed to take prompt and effective remedial action reasonably calculated to end the harassment.

32. As a direct and proximate result of Defendant's conduct, Plaintiff suffered tangible employment actions, including administrative leave, demotion, relocation, reduction in pay, and termination, for which Defendant is liable without recourse to an affirmative defense.

33. Defendant's conduct violated 42 U.S.C. § 2000e-2(a).

34. As a result of Defendant's unlawful conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is entitled to compensatory and, as applicable, punitive damages, together with her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

**SECOND CAUSE OF ACTION**

**(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a))**

35. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

36. Plaintiff engaged in activity protected by Title VII when she opposed and reported Watson's sexual harassment to Rogers beginning on or about August 21, 2023, and continuing thereafter, and when she rejected Watson's unwelcome sexual advances.

37. Following Plaintiff's protected activity, Defendant took a series of materially adverse actions against Plaintiff, including placing her on administrative leave, demoting her, relocating her

to Walterboro, reducing her pay, subjecting her to pretextual and heightened scrutiny of her job performance, terminating her employment, and, upon information and belief, pressuring former coworkers to provide unfavorable statements about her after her termination.

38. There is a causal connection between Plaintiff's protected activity and the adverse actions taken against her, as demonstrated by, among other things, the close temporal proximity between Plaintiff's reports of harassment and Defendant's adverse actions, and by Defendant's shifting, inconsistent, and false explanations for those actions.

39. The reasons Defendant has offered for its adverse actions against Plaintiff, including her termination, are false and are pretext for unlawful retaliation.

40. Defendant's conduct violated 42 U.S.C. § 2000e-3(a).

41. As a result of Defendant's unlawful retaliation, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is entitled to compensatory and, as applicable, punitive damages, together with her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

**THIRD CAUSE OF ACTION**

**(Quid Pro Quo Sexual Harassment in Violation of Title VII, 42 U.S.C. § 2000e-2(a))**

42. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

43. Watson, a supervisor with authority over Plaintiff's store and reporting line, subjected Plaintiff to unwelcome sexual advances.

44. Plaintiff's rejection of Watson's advances, and her reporting of his conduct, resulted in tangible adverse employment actions against her, including administrative leave, demotion, relocation, reduction in pay, and ultimately termination.

45. Because a tangible employment action resulted from Plaintiff's rejection of a supervisor's sexual advances and her opposition to his conduct, Defendant is liable for quid pro quo sexual harassment in violation of Title VII, and no affirmative defense is available to Defendant.

46. As a result of Defendant's unlawful conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is entitled to compensatory and, as applicable, punitive damages, together with her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Tara Miller respectfully prays for judgment against Defendant Waffle House, Inc. for actual, compensatory, and punitive damages in a just and equitable amount, for front and back pay, for pre-judgment and post-judgment interest, for her attorneys' fees and costs of this action, and for such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

EHMAN LAW LLC

Dated: September 29, 2026

/s/ Brett M. Ehman____________
Brett M. Ehman
Fed. Id. No. 12844
S.C. Bar No.: 102443
Attorney for Plaintiff
2971 West Montague Avenue, Suite 203
North Charleston, SC 29418

(843) 225-3607
brett@ehmanlaw.com